

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

**PD-1059-09**

---

**DERRICK DWAYNE GRANT, Appellant**

**v.**

**THE STATE OF TEXAS**

---

**On Discretionary Review of
Case No. 10-07-00317-CR
of the Tenth Court of Appeals,
McLennan County**

---

WOMACK, J., delivered the opinion of the unanimous Court.

The appellant, Derrick Dwayne Grant, pled guilty to burglary of a habitation with a

deadly weapon. After a jury trial on punishment, he was sentenced to 55 years in prison. The

Tenth Court of Appeals reversed the judgment, holding that the trial court erred in denying the

appellant's *Batson*[1] challenge to the State's exercise of peremptory strikes. The Court found that

the State's explanation for striking venire member J. Franklin was a pretext for racial

discrimination because "there was no meaningful examination of Franklin regarding the reason

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

the State used to strike him."

We granted the State's petition for discretionary review to determine whether a lack of meaningful questioning can be sufficient, on its own, to support a *Batson* challenge, and whether the Court of Appeals properly applied the "clearly erroneous" standard of review. We hold that a lack of meaningful questioning might be sufficient to support a *Batson* challenge under the appropriate circumstances, but the Court of Appeals erred in applying the standard of review in this case. We therefore reverse the Court's decision and remand for consideration of the remaining claims.

I. Standard of Review

In *Batson*, the United States Supreme Court held that, while a prosecutor ordinarily may exercise peremptory strikes for any reason related to his views concerning the outcome of the trial, "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race."[2] A *Batson* challenge to a peremptory strike consists of three steps. First, the opponent of the strike must establish a *prima facie* showing of racial discrimination. Second, the proponent of the strike must articulate a race-neutral explanation. Third, the trial court must decide whether the opponent has proved purposeful racial discrimination.[3]

The trial court's ruling in the third step must be sustained on appeal unless it is clearly erroneous.[4] Because the trial court's ruling requires an evaluation of the credibility and demeanor

---

[2] *Id.*, at 89.

[3] *See, e.g., Purkett v. Elem*, 514 U.S. 765, 767 (1995); *Young v. State*, 283 S.W.3d 854, 866 (Tex. Cr. App. 2009).

[4] *See Snyder v. Louisiana*, 552 U.S. 472, 477 (2008).

of prosecutors and venire members, and because this evaluation lies peculiarly within the trial court's province, we defer to the trial court in the absence of exceptional circumstances.[5]

## II. The Challenged Strike

As Article 35.17(1) of the Code of Criminal Procedure permits, *voir dire* examination in this non-death-penalty trial was conducted in the presence of the entire panel of venire members. During *voir dire*, Franklin was asked to respond to several general questions about evidence and criminal law, but he was not asked about his responses to the written juror questionnaire. At the *Batson* hearing, the State articulated this explanation for striking Franklin:

> On Juror Number 20, Mr. Franklin, his actually comes from his juror card. He noted on his juror card that his wife works at the Wal-Mart return center, which is from the information we have where the Defendant's – I don't know if she's a new girlfriend or somebody who's just been a part of his life for some period of time . . . our information is that she also works there. It's a girl who is, I guess, seeing the Defendant off and on throughout the time that the victim is seeing him [and she] also works with that juror's wife. And we had some concerns about that because, obviously, people who work together talk and people who go home to their spouses talk to them about why they're in court.

The appellant argued that any relationship between Franklin's wife and the appellant's girlfriend "would be the subject of an inquiry in chambers to see if that actually existed." The appellant further argued that the State could not "rely on surmise and speculation … to disprove a *prima facie* case of systemic racial discrimination. … [I]t has to be the subject of specific inquiry into those arenas and areas in order for it to get over the *prima facie* case."

The State then elaborated on its explanation:

---

[5] *Id.*; *see also Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Cr. App. 2008) ("[A] reviewing court should examine the trial court's conclusion that a facially race-neutral explanation for a peremptory challenge is genuine, rather than a pretext, with great deference, reversing only when that conclusion is, in view of the record as a whole, clearly erroneous.").

I would also tell you that as far as Number 20 goes, when we were looking through the cards[, a prosecutor] right away mentioned before we even started the process that the prospective juror's spouse worked at the same place as a woman the Defendant had been involved with.

…

[N]o further inquiry or no further assertions by any of those people would have changed my opinion on why I felt like they couldn't be fair in this case and why I felt like a preemptory [*sic*] challenge was necessary.

The trial court ultimately found that "the State used their preemptory [*sic*] strikes for race-neutral reasons," but it did not make findings specific to any challenged strike.

## III. On Appeal

The Court of Appeals began its analysis by listing factors from our opinion in *Whitsey v. State*,[6] including the factor that "there was a lack of questioning to the challenged juror or a lack of meaningful questions."[7] The Court first suggested that the *Whitsey* factors were a "useful guide" but were not dispositive on the issue of discriminatory intent: a factor would only "*weigh against* the legitimacy of a race-neutral explanation" and "*tended to show . . .* that the State's reasons for the strike were not actually supported by the record or were an impermissible pretext."[8] After reciting the parties' arguments, however, the Court made oral questioning a requirement, stating that "[t]he State *must* engage in meaningful voir dire examination on a

---

[6] 796 S.W.2d 707 (Tex. Cr. App. 1990).

[7] *Grant v. State*, 2009 WL 1412854, at *2 (Tex. App.–Waco May 20, 2009) (citing *Whitsey*, 796 S.W.2d, at 713-14).

[8] *Id*. (emphasis added).

subject it alleges it is concerned about."[9] The Court cited *Miller-El v. Dretke*.[10]

While the Court of Appeals seemed at another point to qualify its requirement by saying that the lack of "meaningful voir dire examination" is only "*some evidence* that the asserted reason for the strike was a pretext for discrimination,"[11] the Court's conclusion reestablished oral questioning as a requirement. The Court found that the State's explanation was not supported by the record and was a pretext for discrimination because "absolutely no exchange between Franklin and the State took place regarding the reason for striking him."[12] Accordingly, the Court found the trial court's acceptance of the State's explanation to be clearly erroneous.

In dissent, Justice Reyna took issue with the majority's statements that the State must engage in meaningful voir dire examination on a subject it alleges it is concerned about, and that a failure to do so is some evidence that the explanation was a pretext. Justice Reyna argued that in the vast majority of cases, a *Batson* challenge will not be successful if it rests solely on a lack of meaningful questioning.[13] In Justice Reyna's view, the majority's reliance on *Reed* and *Miller-El* was misplaced because those cases used the lack-of-questioning factor only in conjunction with a comparative analysis of similarly situated jurors.[14]

---

[9] *Id.*, at *3 (emphasis added).

[10] 545 U.S. 231, 246 (2005).

[11] *Grant*, 2009 WL 1412854, at *3 (emphasis added) (citing *Reed v. Quarterman*, 555 F.3d 364, 376 (5th Cir. 2009)).

[12] *Id.*

[13] *Id.*, at *4.

[14] *Id.*

IV. Analysis

Shortly after *Batson* was decided, this Court suggested a number of factors that could be considered in the third step of a *Batson* challenge. In *Keeton v. State*,[15] we looked approvingly to decisions in Alabama, Florida, and Missouri that set out illustrative lists of the types of evidence that could be used. Shortly thereafter in *Whitsey*, we applied a nonexclusive list of five factors used by the Florida courts (and cited in *Keeton*) to find that the prosecutor had exercised peremptory strikes based on race.[16]

Neither *Keeton*, nor *Whitsey*, nor any of our numerous *Batson* decisions have ever held that the presence of any particular factor should be dispositive on the issue of discriminatory intent.

The Court of Appeals cited *Miller-El* for the proposition that the State "*must* engage in meaningful *voir dire* on a subject it alleges it is concerned about."[17] We do not read *Miller-El* to stand for that proposition. To the contrary, *Miller-El* pointed to a lack of questioning only as additional evidence of discrimination, and quoted an Alabama holding that the failure to engage in meaningful *voir dire* examination on a subject the State alleges it is concerned about is

---

[15] 749 S.W.2d 861, 865-69 (Tex. Cr. App. 1988).

[16] 796 S.W.2d, at 713-16. In *Whitsey*, the prosecutor testified that he struck a teacher and the wife of a nurse's assistant because they were likely to be "liberal." But the prosecutor failed to ask any questions of either juror. The failure to ask the jurors any questions, specifically whether they were in fact liberal, was significant in conjunction with the factor that the prosecutor's explanation was "based on a group bias not shown to apply to the challenged juror." *Id.*, at 716. Similarly, in *Emerson v. State*, 851 S.W.2d 269, 273-74 (Tex. Cr. App. 1993), we found that the State's explanation was not legitimate when the State believed that the venire member was an unemployed college student or professor, and therefore liberal. Because the State did not ask any questions to confirm the venire member was liberal, the State improperly "applied a group bias without inquiring whether it applied to [the venire member] specifically." *Id.*, at 274.

[17] *Grant*, 2009 WL 1412854, at *3 (emphasis added).

*evidence suggesting* pretext.[18] *Miller-El* also was a case in which prospective jurors were examined individually and apart from other prospective jurors; as we explain below, the evidentiary value of lack of questioning is likely to be significantly less when jurors are examined in a group.

In *Vargas v. State*,[19] we stressed that the *Keeton* and *Whitsey* factors could be considered by the trial court, but they should not replace the applicable standard of review:

> Appellant's contention that the objective factors discussed in *Keeton* control the analysis is not correct. These factors certainly may be considered in evaluating the trial judge's overruling of a *Batson* claim, but they are not determinative. The overriding standard is still whether the trial judge's decision was supported by the record so that it is not clearly erroneous.[20]

Nor have we held that some factor in addition to a lack of questioning must be present in order to find discriminatory intent. We said in *Chambers v. State*, "In cases reversed because of the State's failure to establish the legitimacy of its explanations through *voir dire* questions, at least one of two other factors has existed[:] 1) the legitimacy of the State's apprehension was not obvious and 2) there was other evidence of disparate treatment."[21] While we agree with *Chambers* and Justice Reyna that the lack-of-questioning factor may arise in conjunction with other factors, we do not find support in our cases for the State's more extreme proposition that "basing reversal exclusively on a lack of questioning is wrong." Categorically requiring more than the lack-of-questioning factor would be incompatible with *Keeton*'s and *Whitsey*'s

---

[18] 545 U.S., at 246 (quoting *Ex parte Travis*, 776 So.2d 874, 881 (Ala. 2000)).

[19] 838 S.W.2d 552 (Tex. Cr. App. 1992).

[20] *Id.*, at 554.

[21] 866 S.W.2d 9, 24-25 (Tex. Cr. App. 1993).

characterization of the factors as nonexclusive illustrations of the types of evidence that can be considered – just as it would be inconsistent to allow the lack-of-questioning factor to be dispositive.

Our *Batson* cases also contain two further holdings specifically applicable to the facts of the present case. First, we have repeatedly held that a venire member's written answers to a juror questionnaire may provide a valid reason for a peremptory strike.[22] Second, we have held that the reason for a peremptory strike need not actually turn out to be correct.[23]

In the present case, the State explained that it struck Franklin because a response on Franklin's questionnaire led the State to believe that Franklin's wife knew the appellant's girlfriend. The trial court had before it Franklin's written answer, the record of the entire *voir dire*, and the two prosecutors' representations that they had certain information about the appellant's girlfriend and suspected a relationship to Franklin's wife. Thus there was a foundation in the record for the trial court's ruling that the explanation was not a pretext for discrimination. The credibility of the prosecutors' representations about their information and

---

[22] *See, e.g., Jasper v. State*, 61 S.W.3d 413, 422 (Tex. Cr. App. 2001); *Camacho v. State*, 864 S.W.2d 524, 529 (Tex. Cr. App. 1996).

[23] For example, in *Johnson v. State*, 68 S.W.3d 644 (Tex. Cr. App. 2002), the record reflected that a person of the same name and date of birth as a venire member had been arrested. In response to the appellant's complaint that the State failed to ask the venire member whether she was the person arrested, we stated, "As the party making the *Batson* challenge, appellant had the burden to show that the explanation given was merely a pretext for discrimination. It is not enough merely to show that a proffered explanation turns out to be incorrect. … Here, appellant has failed to prove that the prosecutor's explanation was incorrect, much less that it was a pretext for discrimination." *Johnson*, 68 S.W.3d, at 649. In *Ford v. State*, 1 S.W.3d 691, 694 (Tex. Cr. App. 1999), the State struck venire member Allen because she knew the appellant's mother, but it was venire member Alaniz who actually knew the appellant's mother. We found that "[a]ll appellant has proven on appeal is that the reason given was incorrect; this is not equal to proving that the reason given was a pretext for a racially motivated strike." *Ford*, 1 S.W.3d, at 694.

suspicion is a matter "peculiarly within the trial court's province."[24] The correctness of the prosecutors' suspicion was irrelevant.[25]

The appellant's argument that the lack of questioning is persuasive evidence of discriminatory intent fails for two reasons. First, the State did question Franklin. A written questionnaire was provided to Franklin, and Franklin gave a written response with certain information about his wife. The prosecutors represented that their strike was based on this response. A written response to a written question can be just as valid an explanation for a strike as an oral response to an oral question.[26]

Second, a lack of oral questioning to flesh out a written response has significantly less persuasive value when prospective jurors are being questioned together. When each venire member may be examined for extensive periods of time apart from the rest of the panel,[27] the *voir dire* process may take weeks. In contrast, the record in this case reflects that each side was given "45 minutes to an hour" to complete its *voir dire* examination of the entire panel. Within these constraints a party is limited in its ability to ask an individual venire member on whom the party may exercise a strike – let alone all such venire members – about specific written responses to a written juror questionnaire. In fact, after reviewing the *voir dire* transcript in this case, we cannot find that either party asked any venire member about any written response.

We conclude that the Court of Appeals misapplied the standard for reviewing the trial

---

[24] *Snyder*, 552 U.S., at 477.

[25] *See Johnson*, 68 S.W.3d, at 649; *Ford*, 1 S.W.3d, at 694.

[26] *See Jasper*, 61 S.W.3d, at 422; *Camacho*, 864 S.W.2d, at 529.

[27] *See* TEX. CODE CRIM. PROC. art. 35.17(2).

court's ruling. Properly applying the standard of review, the Court should have given deference to the trial court's evaluation of the prosecutors' credibility and should not have given dispositive weight to the lack-of-questioning factor. Based on our review of the record, the trial court's ruling denying the appellant's *Batson* challenge was not clearly erroneous.

We reverse the judgment of the Court of Appeals and remand the case for consideration of the appellant's remaining claims.

Delivered November 17, 2010.
Publish.